UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MCQUILLEN PLACE COMPANY, LLC,<br><br>Debtor. | Chapter 7 Bankruptcy<br>Case No. 19-00507 |
| FIRST SECURITY BANK & TRUST CO.,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES M. THOMSON,<br><br>Defendant. | Adversary Case No. 20-09037<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff First Security Bank & Trust Company (the "*Bank*") submits its Memorandum in Support of Plaintiff's Motion for Summary Judgment with respect to the relief requested by the Bank in its Complaint. (Doc. #1.)

**I. THOMSON'S CLAIM IS SUBORDINATE TO THE BANK'S CLAIM**

As part of a transaction to finance the construction of a building project known as McQuillen Place, Debtor McQuillen Place Company, LLC ("*Debtor*") borrowed money from Cedar Rapids Bank & Trust ("*CRBT*"). Defendant Charles M. Thomson ("*Thomson*" or "*Defendant*") executed a Commercial Guaranty in favor of CRBT (the "*Guaranty*") (attached as M4SJ 1001). CRBT subsequently assigned the notes, mortgages, loans, and transaction documents, including the Guaranty at issue here, to the Bank such that the benefits of the Guaranty accrue to the Bank. *See* M4SJ 1002 at 1 ("CRBT hereby assigns to [the Bank], and [the Bank] hereby accepts . . . and assumes all of CRBT's obligations under the following"

documents, including the "Commercial Guaranty of Charles M. Thomson (unlimited) dated 31, 2014 . . . ."). The Bank has filed a Proof of Claim against the Debtor, *see* Original Proof of Claim #4; Amended Proof of Claim #4 and attached documents; Proof of Claim #23, as has Thomson, *see* Proof of Claim #8.

Via the Guaranty, Thomson "absolutely and unconditionally" guaranteed full payment of Debtor's indebtedness and full performance and discharge of Debtor's obligations to the Bank, *see* M4SJ 1001 at 1,[1] and the Guaranty provides all claims *Thomson* may have against the Debtor be subordinated to the claims the *Bank* has against the Debtor. *Id.* at 2–3. Specifically, Thomson, who was and is an attorney licensed to practice law in the state of Iowa, *see* M4SJ 1003 at 1,[2] agreed in the Guaranty that the debts owed by the Debtor to the Bank "shall be superior to any claim that [Thomson] may now have or hereafter acquire" against Debtor. M4SJ 1001 at 2. The Guaranty plainly states that Thomson "hereby expressly subordinates any claim [Thomson] may have against [Debtor], upon any account whatsoever, to any claim that [the Bank] may now or hereafter have against [Debtor]." *Id.* Furthermore, the Guaranty provides that in the event Debtor enters bankruptcy, Debtor's assets that apply to payments to both Thomson's and the Bank's claims should first "be paid to [the Bank]" so that Debtor's obligations to the Bank may be satisfied. *Id.* at 2–3. Thomson himself has acknowledged on multiple occasions that he signed the Guaranty. *See* M4SJ 1003

---

[1] The Guaranty is one "of payment and performance and not of collection." M4SJ 1001 at 1. The Guaranty further notes that Thomson's liability is "unlimited and [his] obligations are continuing. *Id.* The Guaranty thus is an unconditional guarantee of payment, rather than conditional guaranty of collection. *See Preferred Inv. Co. v. Westbrook*, 174 N.W.2d 391, 395 (Iowa 1970) (distinguishing between an unconditional guarantee of payment and performance, in which a guarantor's obligation is "an absolute undertaking with the imposition of liability on the guarantor immediately upon default" of the Debtor, "regardless of whether any legal proceedings . . . are taken to enforce liability" against the Debtor or whether notice of default is given to the guarantor, and a guarantee of collection, in which no liability attaches to the guarantor until recovery of the debt from Debtor has failed).

[2] Thomson has also represented himself as a legal expert in this bankruptcy proceeding. *See* M4SJ 1003 at 3.

at 1; M4SJ 1004 at 3 ("Charles M. Thomson is guarantor of the obligations of McQuillen Place Company to Cedar Rapids Bank & Trust Company."); M4SJ 1005 at 5 (the same as the quoted language in M4SJ 1004); Appellants' Resistance to Motion to Dismiss at 8, *Thomson v. First Sec. Bank & Tr. Co.* (8th Cir. Nov. 16, 2020) (No. 20-3245) ("[I]t is undisputed that Thomson is a guarantor of the Debtor's indebtedness . . . .") (attached and hereinafter referred to as M4SJ 1006).

A subordination agreement is enforceable "to the same extent that such an agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). A subordination agreement "is nothing more than a contract where one party agrees to subordinate his claim against a debtor in favor of the claim of another creditor." *In re Sepco, Inc.*, 36 B.R. 279, 285 (Bankr. D.S.D. 1984). Because the Guaranty is a contractual document in which Thomson agreed to subordinate any and all of his claims to the Bank's claim, the Guaranty is a subordination agreement under § 510(a). Since "[a]pplicable nonbankruptcy law is the law of contracts," *id.*, Iowa's law of contracts governs interpretation of the Guaranty. M4SJ 1001 at 3 (providing that Iowa law governs).

Under Iowa law, a valid contract must consist of an offer, acceptance, and consideration. *Compare Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009) (citing the general rule), *with C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80–81 (Iowa 2011) (rejecting Appellant's unconscionability argument and enforcing a contract that contained "a bad bargain" for Appellant because (a) Appellant was a sophisticated entity that had the opportunity to review the contract, (b) no evidence existed that Appellant had unequal bargaining power, and (c) the substantive terms of the contract were not "so oppressive that no person in his or her right senses would enter into it"). Iowa courts presume that a written

and signed agreement, as here, is supported by consideration. *Margeson*, 776 N.W.2d at 656. Further, there do not appear to be any defenses to formation. Thus, the Guaranty is a valid and enforceable contract.

Iowa courts interpret written contracts according to the language contained "within the four corners" of the document itself. *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 216 (Iowa 2017). When interpreting written contracts "the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." *Id.* (quoting Iowa R. App. P. 6.904(3)(n)). Thus, when the parties' intent is clear and unambiguous from the words of the contract itself, Iowa courts enforce the contract as it is written. *DuTrac*, 891 N.W.2d at 216.

The parties' mere disagreement about the meaning of terms does not mean ambiguity exists. *See Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). Rather, "[t]he test for ambiguity is an objective one: Is the language fairly susceptible to two interpretations?" *Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 150–51 (Iowa 2011) (quoting *Nationwide Agri-Bus. Ins. Co. v. Goodwin*, 782 N.W.2d 465, 470 (Iowa 2010)). Terms are ambiguous only if "after all pertinent rules of interpretation have been considered, a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Walsh*, 622 N.W.2d at 503 (internal quotation marks omitted) (quoting *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999)).

The subordination clause unambiguously states that Thomson agreed to subordinate any claim Thomson may have against Debtor to the Bank's claim against the Debtor. No other reasonable interpretation of these terms exists and none has been proffered. Indeed, when Thomson signed the Guaranty, he agreed that he had "read and fully underst[ood] the

terms" of the Guaranty and that the Guaranty's terms reflected his intentions. M4SJ 1001 at 3. Thomson is a licensed attorney in the state of Iowa, *see* M4SJ 1003 at 1, and has represented himself as a legal expert. *Id.* at 3 (Charles Thomson represented himself "as a legal expert" who could give his "expert opinions in his field."). Thomson received the opportunity to be advised by an attorney regarding the terms of the Guaranty. M4SJ 1001 at 3. Thomson has acknowledged on multiple occasions that he signed the Guaranty and understood its terms. *See* M4SJ 1003 at 1; M4SJ 1004 at 3; M4SJ 1005 at 5; M4SJ 1006 at 8. Thus, there is no dispute that Thomson is bound by the Guaranty's subordination clause.

"Absent fraud or mistake, ignorance of a written contract's contents will not negate its effect," regardless whether Thomson actually read the contents of the contract or not. *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993); *see also Cronbaugh v. Farmland Mut. Ins. Co.*, 475 N.W.2d 652, 654 (Iowa Ct. App 1991) ("Where a party to a written contract is able to and has had the opportunity to read the contract, he . . . cannot claim later in an attempt to defeat the contract he . . . did not understand the contract terms or conditions."). No colorable fraud or mistake claim may be made under these facts. Because there is no ambiguity about the terms of the subordination clause, Thomson is bound by the Guaranty he signed. Thus, his claim against Debtor should be subordinated to the Bank's claim according to 11 U.S.C. § 510(a).

## II. THOMSON'S CLAIMS ARE ASSIGNED TO THE BANK

In addition, the Guaranty further provides Thomson assigned to the Bank any and all claims he had against Debtor. Specifically, in the same subordination clause described above in the Guaranty, Thomson agreed to assign to the Bank "all claims which [he] may have or acquire against [Debtor] or against any assignee or trustee in bankruptcy of [Debtor]." *See*

M4SJ 1001 at 3. This assignment is effective such that the Bank receives "full payment" of the amount Debtor owes to the Bank. *Id.* The same legal principles of Iowa law detailed *supra* govern the terms of the assignment clause here, *viz.*, the Guaranty unambiguously states Thomson must assign and has assigned to the Bank all claims he has against Debtor. No alternative reasonable interpretation of these terms exists. Thus, Iowa law requires the Guaranty be enforced as it is written.

WHEREFORE, the Bank respectfully requests the Court grant summary judgment in the Bank's favor with respect to the relief requested by the Bank in the Complaint; declare that Defendant's claim is subordinate to the Bank's claim pursuant to 11 U.S.C. § 510(a), and additionally decree the Defendant has assigned to the Bank his claim against the Debtor, and provide such other relief as may be just.

    /s/ Eric W. Lam
Eric W. Lam, AT0004416
Eric J. Langston, AT0014001
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
elam@simmonsperrine.com
elangston@spmblaw.com
ATTORNEYS FOR FIRST SECURITY BANK
& TRUST CO.

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this 25th day of November, 2020, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF system and the document was served electronically through the CM/ECF system to the parties of this case.

    /s/ Kelly Carmichael

First Security – McQuillen/Pldgs/BA 20-09037 McQuillen – Drafts/Memorandum re M4SJ.112520.1127.ewl