UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MCQUILLEN PLACE COMPANY, LLC,<br><br>Debtor. | Chapter 7 Case No. 19-00507 |
| FIRST SECURITY BANK & TRUST CO.,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES M. THOMSON,<br><br>Defendant. | Adversary Case No. 20-09037<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Plaintiff First Security Bank & Trust Co. ("*FSB*"), by and through its counsel, hereby submits its Reply to Resistance to Plaintiff's Motion for Summary Judgment.

## I.  THOMSON HAS CITED THE INCORRECT STANDARD OF REVIEW

Defendant Charles Thomson's recitation of the standard of review on this motion is erroneous, as it relies entirely upon Iowa law. Summary judgment in this proceeding is governed by F.R.B.P 7056, which in turn applies Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings. *See In re Agriprocessors, Inc.*, 465 B.R. 822, 827 (Bankr. N.D. Iowa 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the burden of showing there are no genuine issues of material facts, *In re Agriprocessors*, 465 B.R. at 827, but once the movant has supported its motion with probative evidence, the non-moving party "must affirmatively

show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial." *In re Houston*, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008). Additionally, as the party resisting summary judgment, Thomson bears the affirmative burden to identify specific facts in the record to support his asserted affirmative defenses. *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 714 (8th Cir. 2004).

## II.  THOMSON'S ALLEGATIONS OF FRAUD IN THE INDUCEMENT FAIL

The court should reject Thomson's affirmative defense of fraud in the inducement, because Thomson failed to allege fraud with particularity. In alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b).[1] Because the particularity requirement in Rule 9(b) applies to all averments of fraud, Rule 9(b) applies to affirmative defenses alleging fraud. *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1031 (S.D. Iowa 2009); *see also Lafayette Corp., Ltd. v. Bank of Bos. Int'l S.*, 723 F. Supp. 1461, 1467 (S.D. Fla. 1989) (dismissing an affirmative defense of fraud because the affirmative defense was alleged "only in conclusory terms without stating with the requisite specificity any particulars of the misrepresentation"). Under Iowa law, the elements of establishing fraud in the inducement as an affirmative defense are identical to the elements to establish a fraud claim at law. *MHC Inv. Co. v. Racom Corp.*, 254 F. Supp. 2d 1090, 1096 (S.D. Iowa 2002). The elements for a claim for fraud in the inducement are: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage." *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996).

To satisfy the particularity requirements of Rule 9(b), therefore, Thomson must plead "such facts as the time, place, and content of [FSB's] false representations, as well as the

---

[1] Rule 9(b) of the Federal Rules of Civil Procedure is applicable pursuant to F.R.B.P. 7009.

details of [FSB's] fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Put another way, this higher standard of notice requires Thomson to identify "who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). Conclusory allegations of fraud are insufficient. *Weimer v. Int'l Flavors & Fragrances, Inc.*, 240 F.R.D. 431, 436 (N.D. Iowa 2007); *see, e.g.*, *In re Vorhes,* # 16-1577, Adversary # 17-9009, 2018 WL 1577980, at *5 (Bankr. N.D. Iowa Mar. 29, 2018) (granting summary judgment on fraud claim when "no evidence to suggest otherwise" had been presented).

In his Response to Statement of Facts and Statement of Additional Facts, Thomson identifies no individual from FSB who fraudulently induced Thomson to enter into the loan transactions. Dkt. 25-2 ¶¶ 25–27. Additionally, in the Counterclaim for fraud from an ongoing state court proceeding that Thomson incorporated from his attached affidavit, Dkt. 25-3 ¶ 4, (Counterclaim is attached as M4SJ 2001), Thomson likewise fails to identify any individual from FSB who fraudulently induced him. M4SJ 2001 ¶¶ 116–22. There is likewise no allegation that any FSB personnel intentionally misled Thomson. *Id.; see Asbury Square, L.L.C. v. Amoco Oil Co.*, 221 F.R.D. 497, 501 (S.D. Iowa 2004) (noting that party alleging fraud must also "set forth specific facts that make it reasonable to believe that [the opposing party] knew that a material statement was false or misleading"). Rather, Thomson generally alleges FSB "knew or should have known" that FSB did not have specific expertise in transactions involving economic development incentives in the State of Iowa that Thomson relied upon in entering the mortgage loan agreement. M4SJ 2001 ¶ 117. None of Thomson's allegations satisfies Rule 9(b)'s particularity requirement, as they do not specify the statements

3

that were fraudulent, do not identify the speaker, do not state when and where the statements were made, and do not explain why FSB's statements were fraudulent. *Gunderson v. ADM Inv. Servs., Inc.*, 85 F. Supp. 2d 892, 903 (N.D. Iowa 2000).

Further and most tellingly, Thomson's own testimony demonstrates FSB did not fraudulently induce Thomson to execute the Guaranty. Specifically, the alleged fraud contained in Thomson's affidavit occurred *after* CRBT and Thomson entered into the Guaranty. Dkt. 25-3 ¶ 8(c). Furthermore, Thomson testified in a deposition (attached as M4SJ 2002) that before entering into the loan agreements with CRBT, FSB told Thomson to work with CRBT rather than with FSB because CRBT had more experience with the economic development incentives involved in the construction project than FSB did:

- Representatives of FSB told Thomson that the complexities of economic development incentives "were so foreign to them," that FSB was "reluctant to get involved in the transaction." M4SJ 2002 at 19:5–13.
- Thomson understood that FSB was "not familiar with the mechanics" of the public financing involved in the construction project, and had the impression that FSB "relied upon the insight and experience of [CRBT]" during the development of the construction project. *Id.* at 105:1–12.
- A representative of FSB indicated to Thomson that FSB was not familiar with the public financing aspect of the McQuillen Place construction project. *Id.* at 98:9–14.
- Thomson believed that CRBT's involvement and expertise would convince FSB to work with Debtor in financing the McQuillen Place construction project. *Id.* at 28:9–14; 29:9–25.

And, Thomson further testified that:

4

- Gary Becker, a representative of CRBT, told Thomson that CRBT "had extensive experience with the type of financing that [Debtor] was going to be using to complete development." *Id.* at 14:3–19.
- Gary Becker also "discussed at some length the experience and skill of [CRBT] in handling transactions such as [the one Debtor entered into]." *Id.* at 16:11–21.
- Debtor's own attorney, Norm Jones, specifically recommended that Thomson reach out to Mr. Becker and CRBT about financing the McQuillen Place construction project. *Id.* at 20:1–18.

Based on Thomson's own testimony, no one from FSB misled Thomson into believing that FSB had the requisite knowledge of economic development loans—instead FSB made clear to Thomson that FSB *did not* have such specialized experience.

Furthermore, there is no evidence that FSB was involved in the execution of the Guaranty, or that FSB fraudulently induced Thomson to enter into the Guaranty with CRBT. For one thing, FSB was not originally a party to the Guaranty when it was executed. M4SJ 1001 at 1. FSB was merely a loan participant at the time the Guaranty was executed, and only became involved with the Guaranty and other loan documents when CRBT assigned said documents to FSB much later. *See* M4SJ 1002. Thomson confirmed FSB was not involved in the drafting and execution of the Guaranty and other loan documents, testifying that:

- CRBT did not assign its rights in the loan documents and Guaranty to FSB until *after* CRBT had filed a foreclosure against the McQuillen Place construction project. M4SJ 2002 at 110:9–16.

5

- Thomson understood that "the loan documentation was handled by [CRBT] and all the construction advances was done by [CRBT]" and not FSB. *Id.* at 41:14–22.

There is no evidence that FSB was directly involved in the execution of the Guaranty, and Thomson has identified no statement made by a representative of FSB that induced him to enter into the Guaranty with CRBT. His affirmative defense of fraud thus necessarily fails.

## III. FSB DID NOT BREACH ANY DUTY TO NEGOTIATE IN GOOD FAITH

"An implied duty of good faith and fair dealing is recognized in all contracts." *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012). The duty is intended to give parties what they would have stipulated for at the time of contracting if all future problems of performance were foreseeable. *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550–51 (Iowa Ct. App. 2011). **But the duty "does not support an independent cause of action for failure to act in good faith under a contract."** *Id.* at 550. Indeed, the covenant does not create "new substantive terms that do not otherwise exist in the contract." *Bagelmann*, 823 N.W.2d at 34. Thus, a breach of the duty of good faith and fair dealing claim necessarily requires an allegation of bad faith that attaches to a specific contract term. *Id.*

Here, Thomson has identified no provision in the Guaranty that was created by any alleged bad faith action on the part of FSB. To the extent Thomson alleges FSB violated a duty to negotiate in good faith, such a claim does not exist under Iowa law. Iowa courts have definitively rejected arguments that the duty of good faith to perform and enforce a contract should also be extended to the negotiation of a contract. *See Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990) (recognizing a duty of good faith in the performance and enforcement of a contract, but rejecting the argument that Iowa law recognizes a duty to negotiate a contract in good faith); *Balins Prop., Inc. v. First Nat'l Bank of W. Union*, No. 05-0794, 2006 WL

2871975, at *3 (Iowa Ct. App. Oct. 11, 2006). Furthermore, Thomson has already acknowledged in a filing in the state court proceeding that no Iowa court has recognized a claim based on the violation of a duty to negotiate (attached as M4SJ 2003). M4SJ 2003 at 9. This Court should reject Thomson's argument that FSB breached its duty to negotiate in good faith, because such a claim does not exist under Iowa law.

## IV. THE GUARANTY WAS NOT RELEASED AND REMAINS ENFORCEABLE

Thomson's argument that the Guaranty was released and is now unenforceable is likewise without merit. Thomson relies entirely upon § 46 of the Restatement (Third) of Suretyship and Guaranty, and alleges circa October 15, 2018, a third party, *viz.* Itasca Financial LLC ("*IFL*") allegedly offered to purchase the entire McQuillen loan transaction from FSB. But Thomson cited to no Iowa caselaw adopting Restatement § 46. The void in citation is precisely because no Iowa court has adopted § 46 of the Restatement. In short, Iowa law does not recognize Thomson's theory. In contrast, under Iowa law a guaranty is a contract by one person to another for the fulfillment of a promise of a third person. *City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 86 (Iowa 2004). Here, Thomson guaranteed the full payment and performance of the Indebtedness of the Debtor. A guarantor's obligation must be determined from the terms of the parties' written contract. *See Bousquet v. Ward*, 89 N.W. 196, 197 (Iowa 1902). "[G]uaranty contracts are to be construed according to the intention of the parties as ascertained from the language used in the [guaranty] contract and the circumstances under which the guaranty is given." *Hills Bank & Tr. Co. v. Converse*, 756 N.W.2d 481, 2008 WL 3364334, at *3 (Iowa Ct. App. Aug. 13, 2008), *vacated in part on other grounds by* 772 N.W.2d 764 (Iowa 2009). The terms of the Guaranty are unambiguous and make clear that Thomson's arguments regarding the early release of his obligations are

7

groundless. Specifically, Thomson has waived all defenses in the Guaranty. The second page of the Guaranty contains a section entitled "Guarantor's Waivers":

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral, including, but not limited to, any rights or defenses arising by reason of . . . (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.

M4SJ 1001 at 2. Thomson also waived "any right to require [FSB] . . . (C) to resort for payment or to proceed directly or at once against any person, including [the Debtor] or any other guarantor" and also waived any right Thomson had to require FSB "(F) to pursue any other remedy within [FSB's] power; or (G) to commit any act . . . of any kind, or at any time, with respect to any matter whatsoever." *Id.* In agreeing to these waivers, Thomson acknowledged that he made these waivers with his "full knowledge" of "the significance and consequences" of said waivers. *Id.*

A written waiver is a contract governed by contract law principles. *See Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). The cardinal principle of contract construction is that the intent of the parties controls, except in cases of ambiguity. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862 (Iowa 1991). Unless the terms of a contract are ambiguous and unclear, the parties' intent is determined by what the contract itself says. *Berryhill v. Hatt*, 428 N.W.2d 647, 654 (Iowa 1988). Just as with other contracts, when the terms of a waiver are not ambiguous, courts will enforce the terms as written. *Iowa Fuel & Minerals*, 471 N.W.2d at 862–63. The Eighth Circuit, in interpreting Iowa law, has determined that a guarantor's liability is defined by the terms of the guaranty. *Aetna Life Ins. Co. v. Anderson*, 848 F.2d 104, 107 (8th Cir. 1988). *Anderson* further noted that a guarantor may "waive defenses he otherwise would be entitled to raise" in a guaranty, *id.*, and that "[t]he breadth of the waiver does not render it invalid." *Id.* at 107 n.10; *see also DuTrac Cmty.*

8

*Credit Union v. Hefel*, 873 N.W.2d 552, 2015 WL 7574230, at *7 (Iowa Ct. App. Nov. 25, 2015) (holding that the liability of the guarantor is based on the obligations assumed by the guarantor in the guaranty).

Here, Thomson knowingly waived all defenses except actual payment and performance of the Indebtedness. This includes Thomson's argument that a third party's offer to FSB somehow released him from his obligations, because Thomson expressly waived any right to require FSB to resort for payment against any particular person. M4SJ 1001 at 2. The waiver terms in the Guaranty are unambiguous, and Thomson remains bound by them. Thus, the court should find the Guaranty remains enforceable and grant summary judgment to FSB.

Further, assuming *arguendo* somehow Restatement § 46 applies in Iowa, § 6 of the Restatement (Third) of Suretyship and Guaranty notes that "[e]ach Rule in this Restatement . . . may be varied by the contract between the parties subject to it." Restatement (Third) of Suretyship & Guaranty § 6. The principle enunciated in § 6 finds support in Iowa law, as Iowa courts consistently uphold parties' freedom to contract around the default principles of contract law. *Avnet, Inc. v. Catalyst Res. Grp. LLC*, No. C13-0021, 2014 WL 1469000, at *11 (N.D. Iowa Apr. 15, 2014) ("Iowa courts recognize that guaranties are subject to contract law principles."); *State v. Baldon*, 829 N.W.2d 785, 792 (Iowa 2013) ("[C]ourts enforce contracts because they are a product of the free will of the parties who, within limits, are permitted to define their own obligations."); *Weyerhaeuser Corp. v. Tamko Roofing Prods., Inc.*, 298 F. Supp. 2d 836, 842 (N.D. Iowa 2003) ("It is axiomatic that so long as their agreements are not contrary to public policy and do not violate the law, parties are free to contract as they please."). It is also well-established in Iowa that when commercial entities

represented by counsel agree upon contractual terms, they will be bound by those terms. *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 945 (8th Cir. 2008).

That is precisely what occurred here. Thomson "absolutely and unconditionally" guaranteed the "full and punctual payment and satisfaction of the Indebtedness of [Debtor]" to FSB. M4SJ 1001 at 1. Thomson also agreed that his "liability is unlimited and [his] obligations are continuing," *id.*, and this "guaranty of payment and performance"[2] grants FSB the power to "enforce [the] Guaranty against [Thomson] even when [FSB] has not exhausted [FSB's] remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty, or any other guaranty of the Indebtedness." *Id.* The Guaranty continues "in full force until *all* the Indebtedness . . . shall have been fully and finally paid and satisfied and *all* of [Thomson's] other obligations under this Guaranty shall have been performed in full." *Id.* (emphasis added). These Guaranty terms lead to the conclusion that even if Restatement § 46 applied, Thomson remains bound to the terms of the Guaranty because Thomson has not shown ***full*** payment and performance of the Indebtedness was tendered by the third party, or that the Guaranty would require FSB to accept such an offer.[3] Simply put, even if Restatement § 46 applies, Restatement § 6 allows the parties to contract out of Restatement § 46. And the parties did so here, *viz.* the Guaranty

---

[2] This Guaranty is an unconditional guarantee of payment and not a conditional guaranty of collection. *See Preferred Inv. Co. v. Westbrook*, 174 N.W.2d 391, 395 (Iowa 1970).

[3] Furthermore, it is not necessarily clear that § 46 of the Restatement would apply here. Section 46 only addresses instances in which the principal or secondary obligor tenders performance. Restatement (Third) of Suretyship & Guaranty, § 46. IFL is neither a principal obligor nor a secondary obligor to FSB. The cases that cite and rely upon § 46 address instances in which the *secondary obligor* (the guarantor), not an unrelated third party, offered tender of performance. *See Stokes v. S. States Coop., Inc.*, 651 F.3d 911, 920 (8th Cir. 2011) (citing § 46 in finding that guarantor's obligation was released when guarantor made payments to lender to be credited towards one note executed by debtor and lender instead applied those payments to a different note executed by the debtor that guarantor had not guaranteed); *In re Stone & Webster, Inc.*, 279 B.R. 748, 784–85 (Bankr. D. Del. 2002) (rejecting guarantors' argument that § 46 released them from their obligation to perform when obligee reasonably rejected guarantors' offer to perform in light of guarantor's clear financial weaknesses and prospects of bankruptcy).

requires full and complete payment and performance of the Indebtedness, *i.e.* partial performance does not release Thomson from the Guaranty's provisions.[4] M4SJ 1001 at 1. In that light, Thomson critically has supplied nothing to show that IFL had offered to tender ***full*** payment and performance of the Indebtedness in the Guaranty. Nor are the details of the "certain conditions" suggested by IFL included in the record. Since only ***full*** payment and performance of the Indebtedness might arguably perhaps release Thomson from the obligations, IFL's offer cannot release Thomson from the terms of the Guaranty because Thomson has not shown that IFL's offer was for ***full*** payment and performance of the Indebtedness. Thomson therefore has failed to meet his evidentiary burden of presenting disputed material facts in support of his affirmative defense on a motion for summary judgment. *Midwest Oilseeds*, 387 F.3d at 714.

Further, Thomson did not present competent evidence. Specifically, an affidavit used to oppose a motion for summary judgment must be made on personal knowledge and must "set out facts that would be admissible in evidence." Fed. R. Civ. Pro. 56(c). "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to . . . defeat a motion for summary judgment." *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). Simply put, a party may not rely on hearsay evidence to oppose a motion for summary judgment. *Walker v. Wayne Cty., Iowa*, 850 F.2d 433, 435 (8th Cir. 1988).

Thomson's two letters attached to his affidavit contain multiple examples of inadmissible hearsay that the court cannot consider in ruling on FSB's motion for summary

---

[4] Indeed, for tender of performance to be valid and sufficient under § 46, "the offer of performance must be to the proper person at the proper time and must be unconditional." Restatement (Third) of Suretyship & Guaranty, § 46 cmt. a.

judgment. For instance, Thomson alleges IFL representatives had attempted to engage FSB to further discuss purchasing the McQuillen loan transaction, and a principal of IFL emailed Thomson and said that FSB was "blowing [the IFL principal] off." Dkt. 25-3 at 4. In the second letter dated December 21, 2018, Thomson notes that in October 2018, IFL offered to accept the settlement proposal from July 2018 "subject to further discussion of terms and additional due diligence." *Id.* at 6.

These are examples of inadmissible hearsay evidence, because they are out-of-court statements made by IFL offered to prove the truth of the matter asserted by the various individuals that spoke with Thomson. *See Brooks*, 425 F.3d at 1111. IFL's offer to Thomson has not been entered into evidence, and Thomson's statements regarding what IFL said are hearsay. As such, the court should not consider them in deciding FSB's motion for summary judgment.

## CONCLUSION

Summary judgment should be granted in FSB's favor. Thomson has not pleaded his affirmative defense of fraud with the requisite particularity, and the facts he cites in support of his defense do not create a genuine issue of material fact regarding the formation and execution of the Guaranty. Furthermore, Thomson's claim that his obligations under the Guaranty were released fail because he has not relied on Iowa law, nor has he shown that the facts he has presented create a genuine and material factual issue as to whether the full and complete performance of the Indebtedness in the Guaranty was tendered. The Guaranty remains enforceable and as a result Thomson has subordinated and assigned his claim to FSB. The court should grant FSB's motion for summary judgment.

WHEREFORE, FSB respectfully requests the Court enter summary judgment in favor of FSB.

Dated: January 7, 2021.


/s/ Eric W. Lam
Eric W. Lam, AT0004416
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
elam@simmonsperrine.com
elangston@spmblaw.com
ATTORNEYS FOR FIRST SECURITY BANK
& TRUST CO.

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this 7th of January, 2021, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

/s/ Eric J Langston

First Security – McQuillen/Pldgs/Adv. 20-09037 McQuillen – Drafts/Reply to Resistance to M4SJ.010621.1327.jcb